UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

|  |  |
|---|---|
|  | **REPORT, RECOMMENDATION and ORDER** |
| v. |  |
| CESAR RIVERA-FIGUEROA, *et al*., | 17-CR-00183(LJV)(JJM) |
| Defendants. |  |

The 12 defendants are charged in a 49-count Superseding Indictment [53][1] with controlled substance and firearm related offenses.   Before the court are the unresolved pretrial motions[2] of the remaining defendants[3]  [85, 91, 93, 94, 95, 96, 97, 98, 100, 111, 112, 219], as well as the government's cross-motions for reciprocal discovery, which have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [2].  Having considered the parties' submissions and heard oral argument,[4] the government's cross-motions for reciprocal discovery are granted, defendants' non-dispositive motions are granted in part and denied in part, and I recommend that defendants' motions to suppress be denied.

---

[1]        Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]        Unless otherwise addressed herein, defendants have represented that the remaining portions of their pretrial motions are resolved.

[3]        Defendants Tori Rockmore and Daniel Navarro have pled.

[4]        Defendant Jenhsen Rodriquez was the only defendant whose pretrial motions have been considered without oral argument.  *See* July 13, 2018 Text Order [233].  Defendant Quinton Jones' pretrial motions were the last motions to be argued. [234]. At that point, I considered all pretrial motions under advisement.

# BACKGROUND

The Superseding Indictment charges a variety of conduct, including engaging in a continuing criminal enterprise, in violation of 21 U.S.C. §848(a) (id., Count 1),  attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §846 and 18 U.S.C §2 (id., Counts 3, 5), possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), and 18 U.S.C. §2 (id., Count 4), use of a communication facility to commit a drug felony, in violation of 21 U.S.C. §843(b) (id., Counts 6-40), possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(D) (id., Counts 41, 43); maintaining a drug involved premises, in violation of 21 U.S.C. §856(a)(1) (id., Count 42, 44), possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. §924(c)(1)(A)(i) (id., Counts 45-48), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2) (id., Count 49).  Common to all defendants is the charge that they conspired to possess and distribute five kilograms or more of a substance containing cocaine, in violation of 21 U.S.C. §846.  Superseding Indictment [53], Count 2.  As part of the government's investigation into the alleged conduct, it utilized Title III wiretap orders and search warrants.

## ANALYSIS

**A.    Defendants' Motions**

        **1.    Motions to Dismiss**

                **a.    Defendant Sucley Romero's Motion to Dismiss the Superseding Indictment[5]**

Defendant Romero moves to dismiss the Superseding Indictment "on the grounds that legally sufficient evidence was not presented to the grand jury". Bogulski Affirmation [100], p. 4. Standing alone, defendant's bare conclusory allegation that insufficient evidence was presented to the Grand Jury is insufficient to warrant dismissal. It is well settled that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence". United States v. Calandra, 414 U.S. 338, 345 (1974). Therefore, I recommend that this motion be denied.

                **b.    Defendant Cesar Rivera-Figueroa's Motion to Dismiss Count 1 of the Superseding Indictment**

Count 1 of the Superseding Indictment charges that defendant Rivera-Figueroa "[b]eginning in or before July 2017 . . . and continuing until on or about September 29, 2017, in the Western District of New York, and elsewhere . . . did knowingly, willfully, intentionally, and unlawfully engage in a continuing criminal enterprise in that he did violate [21 U.S.C. §§] 841(a)(1), 843(b), and 846, which violations were part of a continuing series of violations of said statutes undertaken by the defendant . . . in concert with at least five other persons . . . with respect to whom the defendant . . . occupied a position of organizer and supervisor, and from

---

[5]    Although both motions to dismiss are directed at the Indictment, I have treated them as moving against the Superseding Indictment.

which such continuing series of violations the defendant . . . obtained substantial income and resources", all in violation of 21 U.S.C. §848(a).

Defendant Rivera-Figueroa seeks to dismiss Count 1 of the Superseding Indictment for "lack of specificity". Rivera-Figueroa's Memorandum of Law [85-1], pp. 2-3. In doing so, he argues that "[t]here is no delineation of participants or any further detail as to the alleged 'continuing series of violations'", and that "[e]ven when coupled with the other counts of the indictment, it is impossible to discern what specific violations constitute the [continuing criminal enterprise] so that Defendant may properly prepare a defense". Id., p. 3. The government responds that the Superseding Indictment sufficiently apprises defendant of the charges against him, and that "[i]t need not further specify which particular violations will be featured in the government's proof at trial" or identify the individuals who were supervised, organized and managed by the defendant. Government's Response [128], pp. 2-5. I agree.

An indictment sufficient states a violation of §848(a) "where it: (1) closely tracks the language of § 848; (2) alleges a continuing series of felony drug violations of any of the provisions in the subchapters comprising Sections 801 to 971 of Title 21; and (3) identifies the time and location of the alleged enterprise". United States v. Montague, 2018 WL 1317347, *2 (W.D.N.Y. 2018). A "continuing series" requires "at least three felony drug violations committed over a definite period of time". United States v. Flaharty, 295 F.3d 182, 197 (2d Cir. 2002); 21 U.S.C. § 848(c).

Based on that standard, "[t]he type of specificity the defendant urges is not required . . . . The Government need not enumerate the specific who, when, or where of the series in the Indictment; it is enough that it is clear from the face of the Indictment that he is alleged to have engaged in a continuing series of narcotics conspiracies punishable under 21

U.S.C. §§ 841, 843, 846." United States v. Ulbricht, 31 F. Supp. 3d 540, 564 (S.D.N.Y. 2014).

See Flaharty, 295 F.3d at 198 (a §848(a) violation was sufficiently pled where the indictment

"closely tracked the language of § 848(c), and it alleged that the continuing series of felonies

were violations of §§ 841(a)(1) and 846, and that the enterprise was conducted '[i]n or about and

between 1992 and April 1998 . . . within the Eastern District of New York and elsewhere'");

Montague, 2018 WL 1317347, *2.  Therefore, I recommend that this motion be denied.

### 2.    Motions to Suppress Title III Evidence

The Title III orders at issue are the July 21, 2017 Order for target telephone

number (716) 228-5### ("target telephone no. 1")[6]; the August 15, 2017 Order for telephone

numbers (716) 308-4### ("target telephone no. 2), (787) 225-1363 ("target telephone no. 3), and

(716) 398-8### ("target telephone no. 4)[7]; and the September 11, 2017 Order for target

telephone nos. 3 and 4, as well as telephone number (787) 221-6### ("target telephone no. 5).[8]

Whereas the first two Orders were signed by District Judge William M. Skretny, the third was

signed by Judge Vilardo.  Each of the applications were supported by an affidavit from FBI

Special Agent ("SA") Mark R. Schirching.

### a.    Defendant Luis Andino's Motion for Leave to Join in the Co-Defendants' Motions to Suppress the Title III Evidence

Defendant Andino moved on July 5, 2018 [219] - approximately four months

after the March 5, 2018 deadline for filing pretrial motions - for leave to join in the co-

defendants' motions to suppress the Title III evidence. See Scheduling Order [62], ¶2.  Although

he did not initially move to suppress the Title III warrants by the deadline for filing pretrial

---

[6] 17-MR-109
[7] 17-MR-122
[8] 17-MR-122

motions, defendant Andino's timely filed pretrial motion [96] specifically moved for leave to file a motion to suppress the Title III evidence.  O'Rourke Declaration [96], ¶¶116-17. I see no prejudice to the government in permitting joinder, since defendant's counsel agreed at the July 10, 2018 oral argument that he was not seeking to raise any new arguments, but rather to join in the arguments already raised by the co-defendants.  Under these circumstances, defendant's motion for joinder is granted.

### b.     The Co-Defendants' Motion to Suppress the Title III Evidence

All co-defendants move to suppress the Title III evidence in this case.  *See*  Rivera-Figueroa's Memorandum of Law [85-1], pp. 3-8; Quinton Jones' Memorandum of Law [95-1], pp. 1-7; Desiderio Affirmation [112], ¶¶97-110; Okay Affirmation [91], ¶¶14-37; Torre Affirmation [93], ¶¶43-50; Schwartz Affirmation [94], ¶¶82-87; Eoannou Affirmation [97], ¶¶77-105; Ginter Affidavit [98-1], §IV; Bogulski Affirmation [100], ¶¶1-6.

"The defendant bears a significant burden when seeking to suppress an authorized wiretap: once the authorizing judge has made the requisite probable cause and necessity determinations, any court reviewing those determinations must grant 'considerable deference' to the authorizing judge."  United States v. Rodriguez-Perez, 2012 WL 3578721, *6 (S.D.N.Y. 2012).  In reviewing the issuance of a wiretap order, the court does not conduct a *de novo* review; instead, it determines whether "the facts set forth in the application were minimally adequate to support the determination that was made".  United States v. Yannotti, 541 F.3d 112, 124 (2d Cir. 2008); United States v. Papadakos, 729 Fed. Appx. 41, 43  (2d Cir. 2018) (Summary Order).  This showing is "'tested in a practical and commonsense fashion'".  United States v. Concepcion, 579 F.3d 214, 218 (2d. Cir. 2009).

i. **Necessity**

Defendants move to suppress the Title III evidence in this case by arguing that the applications failed to satisfy 18 U.S.C. §2518(1)(c), which requires such applications to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous". While the government's "showing is to 'be tested in a practical and commonsense fashion'", it "must provide some basis for concluding that less intrusive investigative procedures are not feasible". United States v. Lilla, 699 F.2d 99, 103 (2d Cir. 1983). "[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful will not satisfy Title III." Concepcion, 579 F.3d at 218. However, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. The statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods". Id.; Lilla, 699 F.2d at 104 ("[w]iretaps are 'neither a routine initial step nor an absolute last resort'"); United States v. Levy, 2012 WL 5830631, *4 (S.D.N.Y. 2012), aff'd, 626 Fed. App'x 319 (2d Cir. 2015) (Summary Order) (the necessity requirement is not "an insurmountable hurdle and only requires that the Government demonstrate that normal investigative techniques would prove difficult").

Wiretaps have been approved "in complex and sprawling criminal cases involving large conspiracies". Concepcion, 579 F.3d at 218. When investigating a narcotics conspiracy, the government's burden is met by demonstrating "how traditional investigative techniques had failed to provide more than 'a limited picture' of a narcotics organization". United States v. Valdez, 1991 WL 41590, *2 (S.D.N.Y.), aff'd, 952 F.2d 394 (2d Cir. 1991). The need for a

wiretap may also be "compelling" because their "clandestine nature . . . makes them relatively less susceptible to normal investigative techniques". United States v. Kazarian, 2012 WL 1810214, *3 (S.D.N.Y. 2012). Further, "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation". United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975).

### July 21, 2017 Application

SA Schirching's July 21, 2017 Affidavit submitted in support of the initial Title III application identified the goals of the investigation and wiretap application as, *inter alia*, gathering sufficient evidence to indict and convict the named interceptees and other yet unknown co-conspirators, identifying the source of the controlled substances distributed by the organization, identifying the organization's distribution network. Schirching's July 21, 2017 Affidavit [247], ¶50. The investigation to that point had gathered information from two confidential sources ("CS-1" and "CS-2"), and a series controlled buys were conducted by CS-1 with defendant Daniel Navarro. Id., ¶¶13-43. Information had also been gathered from a May 20, 2017 cash seizure by the Transportation Security Administration (id., ¶¶44-45), pen register and trap and trace results for target telephone no. 1 (id., ¶¶46-49), physical surveillance ([247-1], ¶¶60-63), and interviews (id., ¶¶57-59).

SA Schirching acknowledged that while the "information gathered through these investigative techniques has been probative as to the existence of an ongoing illegal narcotics distribution network, it h[ad] not yielded sufficient evidence or ascertained the identities of, or proven beyond a reasonable doubt the guilt of all the participants and co-conspirators in this illegal conspiracy". [247], ¶¶51, 54. He also described why other techniques, including tracking devices ([247-1], ¶64), search warrants (id., ¶65), traffic stops (id., ¶66), financial investigation

(id., ¶67),  trash pulls (id., ¶70), mail covers (id., ¶71),  and pole cameras (id., ¶72), would not enhance (and possibly hinder) the investigation.

### August 15, 2017 Application

SA Schirching reiterated much of what was contained in his initial affidavit concerning the use, limitations, and difficulties with the investigative techniques utilized. Schirching's August 15, 2017 Affidavit [244-1], ¶¶106-27.  He also identified the additional information obtained from the initial wiretap for telephone no. 1 ([244 - 244-1], ¶¶14-100), and information from pen registers placed on telephone nos. 2, 3, and 4. [244-1], ¶¶101-04.  SA Schirching continued to acknowledge that the information gathered through these investigative techniques was probative as to the existence of an ongoing illegal narcotics distribution network, but insufficient to fulfill the goals of the investigation.  Id., ¶106.  Specifically, the controlled purchases and seizures had not led to the organization's "source of supply for cocaine, or locations where [it] stores large quantities of cocaine or proceeds from selling cocaine".  Id.

### September 11, 2017 Application

SA Schirching repeated much of what was contained in his August 15, 2017 Affidavit, with the added information learned from the intercepted communications. Schirching's September 11, 2017 Affidavit [250 - 250-1], ¶¶14-140), a controlled purchased conducted by CS-1 ([250-1], ¶¶141-50), and pen register placed on target telephone no. 5.  Id., ¶¶151-52.  However, he continued to conclude that the information gathered was not sufficient to satisfy the objectives of the investigation.  Id., ¶155.

As detailed below, defendants make specific arguments concerning the lack of necessity demonstrated by the July 21, 2017 application, but only generally argue that the subsequent August 15 and September 11, 2017 applications, which "rely almost exclusively" on

that application, similarly "fail to show the necessity of a wiretap". Rivera-Figueroa's

Memorandum of Law [85-1], p. 8.

Applying the "practical and commonsense" approach required in reviewing Title

III applications, demonstrates that the motion to suppress should be denied. Concepcion, 579

F.3d at 218. Defendants' primary challenge is that "the application gives short shrift to the use

of confidential sources to further in the investigation, with no unredacted factual specifics in the

single paragraph detailing the conclusion that confidential sources could no longer be used".

Rivera-Figueroa's Memorandum of Law [85-1], p. 6 (citing Schirching's July 21, 2017 Affidavit

[247], ¶54). In particular, they rely on Concepcion. Id.

In Concepcion, the court emphasized the "unusual origin" of an investigation into

the defendant's drug activities, which began with the use of a confidential informant as part of an

unrelated terrorist investigation: "The [confidential informant] provided no information about

drug trafficking, and appears to have had no information to provide. . . . [T]he [confidential

informant] provided a lead to one investigation of terrorism; that investigation, fruitless in its

own right, led to an unrelated investigation of drug trafficking. Having stumbled across the drug

case, the Government had but two limited avenues of investigation other than the wiretap-

continue to use the [confidential informant] or attempt physical surveillance of [the defendant]".

579 F.3d at 218–19. In obtaining a Title III warrant for the drug investigation, law enforcement

explained that the confidential informant unsuccessfully attempted to introduce an undercover

agent to the defendant, and that "further attempts to use the [confidential informant] reasonably

appeared unlikely to succeed because [the defendant] would not work with the [confidential

informant], who was still incarcerated". Id. at 219.

In what it characterized as an "exceptionally close case", the Second Circuit reversed the district court's determination that the leads "could have been better leveraged before resorting to a wiretap". Id.  However, the Second Circuit appeared to have little issue with the investigation's use of the confidential informant, concluding that law enforcement "aptly demonstrated" how the government tried and failed to use the confidential informant to infiltrate the defendant's organization and why further attempts reasonably appeared unlikely to succeed. Id.  Instead, the court found law enforcement's explanations of its efforts to exhaust physical surveillance to be deficient, describing those explanations as  "general" and "less than thorough". Id.  Nevertheless, it concluded that those explanations were "at least 'minimally adequate'" to support the warrant.  Id. at 219-20.

In contrast to the circumstances in Concepcion, defendants argue that "[h]ere, there appears to be no such attempts [to use confidential sources], no explanation why such attempts would have failed, and no explanation why other confidential sources could not be recruited".  Defendant Rivera-Figueroa's Memorandum of Law [85-1], p. 6.  That characterization of the investigation's use of confidential sources is belied by SA Schirching's Affidavit.  Although the investigation's use of confidential sources may not have been as clearly exhausted  as it was in Concepcion, there were sufficient limitations identified by SA Schirching as to why the use of confidential sources could not have been better leveraged.

For example, much of the information gleaned from the confidential sources was limited to small controlled purchases conducted with one member of the alleged drug trafficking organization.   SA Schirching explained that "the controlled purchases and seizures have not led to any evidence as to the [organization's] source of supply for cocaine, or locations where the [organization] stores large quantities of cocaine and proceeds from selling cocaine" and that

while "[a]ll of the information from the Confidential Sources indicates that the [organization]

obtains multiple kilograms of cocaine at a time . . . the controlled purchases and seizures have

been much smaller amounts".  Schirching's July 21, 2017 Affidavit [247], ¶51.   Though

redacted, paragraph 54 of SA Schirching's July 21, 2017 Affidavit [248-3], identifies some of

the actual dangers and limitations encountered with the investigation's use of the confidential

sources.[9]

   While defendants may be correct that the government could have used the

confidential sources for a longer period of time to infiltrate the alleged drug trafficking

organization (*see* Okay Affirmation [91], ¶36), "law enforcement officials need not exhaust

every conceivable alternative before obtaining a wiretap".   United States v. Rivera, 527 F.3d

891, 903 (9th Cir. 2008); United States v. Rivera-Ortiz, 2014 WL 6085387, *5 (D. Conn. 2014)

(rejecting the defendant's argument that "valuable evidence could still be obtained with a pole

camera in conjunction with confidential source activity", since it ignores the [described]

limitations . . .  regarding confidential witnesses, and also ignores the legal fact that the agents

are not required to exhaust every possible alternative investigative technique before seeking a

wiretap"). The use of confidential informants, while useful, plainly had limitations and was

insufficient to meet the goals of the investigation. *See* United States v. Vasquez, 214 F. Supp. 3d

108, 109 (D. Mass. 2016) ("[w]hile CS1 provided significant assistance to the Government, that

assistance standing alone was insufficient to meet the goals of the investigation").   In fact, the

---

[9]  SA Schirching's Affidavit is, as defendants characterize, "in places, significantly redacted".
Rivera-Figueroa's Memorandum of Law [85-1], p. 4 n.1.  However, for the most part, the government
appears to have only redacted information that might reveal the identity of the confidential sources, and
defendants cite no authority establishing their entitlement to an unredacted version.

limited scope of the information obtained by the confidential sources is demonstrated by

defendant Rivera-Figueroa's own acknowledgement that "the controlled buys were only ever

conducted between CS-1 and Daniel Navarro". Defendant Rivera-Figueroa's Memorandum of

Law [85-1], p. 4.

Defendants argue that the continued utility of the confidential sources was

evidenced by law enforcement's continued use of that investigative technique in the later

applications. Rivera-Figueroa's Memorandum of Law [85-1], pp. 6-7. Even so, law

enforcement's continued use of confidential sources fails to establish that that investigative

technique was capable (whether standing alone or in conjunction with the other investigative

techniques employed) of providing the breadth of information necessary to fulfill the goals of the

investigation. There is simply no requirement that the government must "exhaust the use of a

confidential informant with limited knowledge before applying for a wiretap". United States v.

Serrano, 450 F. Supp. 2d 227, 238 (S.D.N.Y. 2006).

Where, as here, "investigative techniques are able to uncover evidence of discrete

crimes by members of a criminal enterprise but not able to uncover evidence of the scope of the

enterprise as a whole", wiretaps are permissible. United States v. Barrera, 950 F.Supp. 2d 461,

470-71 (E.D.N.Y. 2013). See United States v. Hinton, 543 F.2d 1002, 1011-12 (2d Cir. 1976)

("even though . . . officers may have garnered sufficient information without the use of wiretaps

to support an indictment against Matthews, and possibly against a few others, there was every

reason to believe that additional co-conspirators were involved who could not be successfully

investigated without wiretapping. The order instituting wiretapping was thus not in error");

United States v. Rajaratnam, 2010 WL 4867402, *21 (S.D.N.Y. 2010) ("the fact that the SEC's

investigation had identified certain sources did not preclude a showing that a wiretap was

necessary to confirm those sources and fully uncover Rajaratnam's network of sources"). Therefore, even if SA Schirching's discussion of the limitations on the use of the confidential sources could have been better developed, it was "at least 'minimally adequate'" to support the warrant. Concepcion, 579 F.3d at 219-20.

Defendants next challenge the lack of factual support for SA Schirching's explanations as to why the use of undercover agents, physical surveillance, and use of the grand jury was not feasible. *See* Rivera-Figueroa's Memorandum of Law [85-1], p. 7; Desiderio Affirmation [112], ¶104. Applying a practical, commonsense, and deferential review, as I must, these arguments are unpersuasive.

In explaining why the use of undercover agents "in anything but an extremely limited and controlled role would be too dangerous to employ", SA Schirching offered the following: the organization is "known to be violent, and carry firearm", members "would likely not trust a person who they do not know through their neighborhood, or through other acquaintances", and if introduced, that person would "likely be limited to only making purchases of cocaine from Navarro or someone lower in the [organization]" and may be "tested and asked to commit criminal activity". Schirching's July 21, 2017 Affidavit [247-1], ¶56.

When "the government has demonstrated in its affidavits that an attempt to secure the evidence by an undercover agent would create a substantial risk of serious harm, it is not necessary that an actual attempt be made". United States v. Shakur, 560 F. Supp. 318, 326 (S.D.N.Y. 1983), aff'd, 758 F.2d 843 (2d Cir. 1985). Although defendants question the factual support for SA Schirching's representation that members of the allege drug trafficking organization were violent (Rivera-Figueroa's Memorandum of Law [85-1], p. 5), even without that information, SA Schirching sufficiently and reasonably explained the difficulty and

-14-

limitations of the use of undercover agents, who like CS-1 and CS-2 would likely have limited

exposure to the alleged drug trafficking organization.  Defendants "point[ ] to no reason why [the

issuing judge] should have doubted the difficulty of introducing an undercover agent into this

close-knit scheme".  Rajaratnam, 2010 WL 4867402, *23.

   With respect to the use of physical surveillance, SA Schirching explained that

while the government had used surveillance (Schirching's July 21, 2017 Affidavit [247-1], ¶60),

and that it was "invaluable in identifying some activities of the subjects", it had limited utility

because "the meetings between NAVARRO and RIVERA-FIGUEROA  and other targets appear

to occur inside of residences or vehicles, not in public view" . Id., ¶61.  He further explained that

"physical surveillance is highly noticeable", especially "over any extended period of time in the

specific areas where the targets operate" and that "the nature of any cellular telephone is that it is

mobile, which limits the usefulness of physical surveillance" Id., ¶62.

   Defendants argue that SA Schirching's explanation concerning the usefulness and

opportunity for physical surveillance is belied by the fact that CS-1's contacts demonstrated that

"up-close contact with the targets was not only possible, but highly probative.".  Rivera-

Figueroa's Memorandum of Law [85-1], p. 7.  However, merely because a confidential source

was able to conduct some limited surveillance does not demonstrate that broader physical

surveillance was possible.  Therefore, I conclude that SA Schirching's explanation of the

limitations of physical surveillance in this investigation was sufficient, and does not establish a

failure to satisfy the necessity requirement.  See United States v. Deas, 2008 WL 4642636, *4

(D. Conn. 2008) (affidavit satisfied necessity requirement, where it explained that "physical

surveillance cannot extend into a drug dealer's home or other secretive location where drug

conversations commonly take place . . . surveillance . . .  presents specific challenges because the

neighborhood is crime-plagued and extremely sensitive to the presence of law enforcement

officers . . . ; [the targets] specifically were sensitive to law enforcement and conscious of the

possibility of surveillance when driving . . . ; and [the target] conducted business at various

locations").

        SA Schirching's July 21, 2017 Affidavit [247-1]  further explained that calling

witnesses before the grand jury would not fulfill the objectives of the investigation because

"[o]nly individuals intimately involved in the  criminal activity at the highest levels have the

requisite knowledge regarding the full scope and nature of the operation", and that in his opinion,

"when subpoenaed, would likely invoke their Fifth Amendment privilege" and "would be

reluctant to incriminate themselves and their close-working associates".  Id., ¶58.  He also

explained that a grand jury investigation "would disclose the existence and scope of this

investigation", but would "not disclose the full scope and nature of the criminal conspiracy".  Id.,

¶59.

        Defendants argue that these "conclusory statements" are "patently inconsistent

with the grand jury's power of compulsory process and information known to the investigating

agents".  Desiderio Affirmation [112], ¶104.  However, similar statements to those contained in

SA Schirching's Affidavit concerning the limitations on the use of grand jury proceedings to

further an investigation have been found to satisfy the necessity requirement.  See United States

v. Campos, 541 F.3d 735, 746–47 (7th Cir. 2008).   Without further elaboration,  defendants'

arguments are unpersuasive.

        Again, even if I were to conclude that SA Schirching's Affidavit was "skimpy in

details as to whether other investigative techniques were likely to succeed" (Concepcion, 579

F.3d at 215) (and I do not), it set forth facts minimally adequate to support the warrant.  Title III

does not require "that any particular investigative procedures be exhausted before a wiretap may be authorized". United States v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987). Such "Monday morning quarterbacking as to what investigative techniques the agents should have employed in addition to what they did employ is utterly unrealistic, if not naive." United States v. Shipp, 578 F. Supp. 980, 989 (S.D.N.Y. 1984).

Finally, defendants appear to argue that much of what is included in SA Schirching's Affidavit is boilerplate, which, if removed, would demonstrate why normal investigative procedures would reasonably have succeeded in fulfilling the goals of the investigation. Rivera-Figueroa's Memorandum of Law [85-1], p. 5. I agree that some of what is included in SA Schirching's Affidavit concerning why normal investigative techniques would not succeed in fulfilling the goals of the investigation appears to be boilerplate. However, that does not render that "language ineffective", since "the facts supporting the conclusion that alternative methods would be unavailing often are similar from one organized crime investigation to another." United States v. Scala, 388 F. Supp. 2d 396, 405 (S.D.N.Y. 2005). Where, as here, "boilerplate accurately depicts the facts on the ground, Title III requirements are satisfied". Rajaratnam, 2010 WL 4867402, *26.

Ultimately, SA Schirching's Affidavit demonstrates that the government did not attempt to use a wiretap as the "initial step" in its investigation. It tried and vetted other investigative tools, but because of the nature of the alleged conspiracy, those tools were of limited value in determining the extent of the criminal activity. Under these circumstances, I conclude that the applications established that the wiretaps were reasonably necessary, and recommend that this portion of defendants' motions be denied.

ii.    **Probable Cause**

"Under Title III, a court may authorize a wiretap based upon a showing of probable cause that (1) an individual is committing, has committed, or is about to commit, a crime; (2) communications concerning that crime will be obtained through the wiretap; and (3) the telephone to be wiretapped is being used for criminal purposes or is about to be used or owned by the target of the wiretap." United States v. Sang Bin Lee, 2014 WL 144642, *1 (S.D.N.Y. 2014). "The standard for probable cause applicable to §2518 is the same as the standard for a regular search warrant. . . . [P]robable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity." United States v. Diaz, 176 F.3d 52, 110 (2d Cir. 1999). The task of the issuing court "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. [The issuing court's] determination of probable cause should be paid great deference by reviewing courts." Id. at 236. "[C]ourts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner." Id.

Defendant Vazquez-Baez argues "[u]pon information and belief" that "there was not probable cause of the issuance of such eavesdropping warrants in that the confidential informant sources . . . were inherently unreliable and suspect", and that "there was insufficient corroboration and/or verification of such information".   Torre Affirmation [93], ¶45.  In response, the government argues that defendant's "two boilerplate sentences" are insufficient "to

raise an argument". Government's Response [133], p. 18.  I agree.  "Judges are not expected to

be mindreaders.  Consequently, a litigant has an obligation to spell out its arguments squarely

and distinctly, or else forever hold its peace".  United States v. Zannino, 895 F.2d 1, 17 (1st  Cir.

1990); United States v. Fuentes, 2012 WL 4754736, *3 (W.D.N.Y.), adopted 2012 WL 4754744

(W.D.N.Y. 2012) (the defendant's "arguments are . . . largely conclusory, boilerplate,

undeveloped and bereft of any supporting case authority.  To the extent his arguments are raised

in such a fashion, I consider them waived, and recommend the denial of this aspect of

defendant['s] . . . motion on this basis").  Nevertheless, SA Schirching's Affidavit specifically

sets forth the reliability of CS-1 and CS-2, including the fact that the information they provided

was corroborated in some respects.  See Schirching's July 21, 2017 Affidavit [247], ¶¶13, 15.

              Defendant Josue Cardona-Soto argues that SA Schirching's Affidavit turned on

"subjective interpretations of conversations" that were "open to more than one . . . reasonable

interpretation".  Okay Affirmation [91], ¶¶25, 27.  That may be so, but the court was entitled to

rely on SA Schirching's interpretation of those conversations, which derived from his experience

with drug investigations.  See United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) ("an

agent's expert opinion is an important factor to be considered by the judge reviewing a warrant

application").  Indeed, "[a] finding of probable cause might rest solely on the fact that an

individual in a recorded conversation speaks in an incoherent manner and makes ambiguous

statements that an agent interprets as narcotics-related."  United States v. Cancelmo, 64 F.3d

804, 808 (2d Cir. 1995); United States v. Carmichael, 2016 WL 9273619, *3 (W.D.N.Y. 2016),

adopted, 2017 WL 2880116 (W.D.N.Y. 2017) ("[i]t is, of course, true that Special Agent Smith

interpreted the language used during the conversations as coded drug language. But his expertise

in drug investigations was set forth in the supporting affidavit and it is permissible for a judge to

rely on such expert views when making a probable cause determination"). Therefore, I recommend that these motions be denied.

### iii.    Minimization

Title III requires that the interception of communications "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception". 18 U.S.C. §2518(5). "Surveilling agents are not forbidden from intercepting all non-relevant conversations, but must minimize such interceptions." United States v. Parrilla, 2014 WL 1621487, *9 (S.D.N.Y. 2014). "Compliance with the requirement is determined by an analysis of the reasonableness of the surveilling agents' conduct based on the totality of circumstances." Sang Bin Lee, 2014 WL 144642, *6.

Defendant Vazquez-Baez argues "[u]pon information and belief" that "the interception of electronic communications was not minimized and particularized such as to comply with the requirements of federal law government the interception of electronic communications". Torre Affirmation [93], ¶46. Although the government noted at oral argument, and defendant did not dispute, that he has been in possession of all of the discovery necessary to support a minimization challenge for months, no other argument or factual basis is offered in support of this skeletal motion. Since "a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace", Zannino, 895 F.2d at 17, these perfunctory arguments fail to meet defendant's burden of establishing a basis for suppression, and I recommend that this motion be denied. See Fuentes, 2012 WL 4754736, *3.

3.     **Motions to Suppress Search Warrants**

Other than the search warrant for the package addressed to 29 Tower Street (*see* subparagraph f, *infra*), the challenged warrants were issued on September 28, 2017 by United States Magistrate Judge H. Kenneth Schroeder, Jr. [144-1]. The warrants were supported by the Affidavit of FBI SA Jason Galle, which was 100 pages long and addressed 11 premises. Id.

a.     **The Motions of Defendants Rivera-Figueroa and Virgen Perez-Jurado to Suppress Evidence from the Search of 92 Wiley Place, Upper[10]**

i.     **Defendant Rivera-Figueroa**

In support of his motion to suppress, defendant Rivera-Figueroa argues that "[t]he search warrant for 92 Wiley Place substantially consists of recitation of conversations intercepted pursuant" to the wiretap orders, and when "[e]xcised of th[ose] conversations, the warrant application is virtually devoid of any information to support probable cause for the issuance of the warrant". Rivera-Figueroa's Memorandum of Law [85-1], p. 9. Since I have concluded that the wiretap orders were not unlawful, and in the absence of any other arguments as to why the search warrant was deficient, I recommend that this motion be denied.

ii.     **Defendant Perez-Jurado**

Defendant argues that SA Galle's supporting Affidavit "fail[s] to establish probable cause to issue a warrant" because it "fail[s] to specifically tie the residence, [defendant] or its contents to criminal wrongdoing". Desiderio Affirmation [112], ¶¶93, 94. In "determining whether probable cause exists to justify a search, the Court must look for a reasonable nexus between the criminal activities described in the warrant application and the place to be searched." United States v. Nix, 2016 WL 11268960, *4 (W.D.N.Y. 2016),  adopted, 2017 WL

---

[10]     Unless otherwise indicated, all addresses are in Buffalo, New York.

65329 (W.D.N.Y. 2017).  "A showing of nexus does not require direct evidence and "may be based on 'reasonable inference' from the facts presented based on common sense and experience."  United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004).

Contrary to defendant's arguments, SA Galle's Affidavit submitted in support of the search warrant sufficiently established a nexus between her alleged drug activities and residence.  Specifically, SA Galle detailed a series of recorded calls and surveillance evidence that he believed, from his training and experience, demonstrated that defendant Perez-Jurado participated in a drug transaction ([144-1], ¶¶13-22) and accepted a delivery of a package of suspected controlled substances on September 13, 2017 at her residence at 92 Wiley Place. Id., ¶¶23-32.  The issuing magistrate was entitled to rely on SA Galle's interpretation of those conversations.  See Fama, 758 F.2d at 838; Cancelmo, 64 F.3d at 808; Carmichael, 2016 WL 9273619, *3. Therefore, I conclude that these portions of SA Galle's Affidavit, as well as the balance of the Affidavit, establish probable cause for the search, and recommend that this motion be denied.

### b.  Defendant Omar Vazquez-Baez's Motion to Suppress Evidence from the Search of 440 7th Street

Defendant Vazquez-Baez seeks to suppress the evidence from the search of 440 7th Street by arguing that the search warrant was not supported by probable cause, was "derivative of evidence that was earlier unlawfully seized", failed to describe with "sufficient specificity the dwelling or persons to be searched", and "relied upon information provided by an anonymous source". Torre Affirmation [93], ¶¶36-41.  The government responded that the motion should be denied because it was not accompanied by an affidavit (or declaration) of standing from defendant.  Government's Response [133], pp. 15-16.  This prompted defendant to submit a belated affidavit of standing [140].

-22-

It is well settled that "[a] defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched". United States v. Marshall, 2012 WL 5511645, *1 (W.D.N.Y.), adopted, 2012 WL 5948782 (W.D.N.Y. 2012). Indeed, all of my Scheduling Orders, including those issued in this case, cautioned that "[a]ny motion to suppress . . . physical evidence must initially be accompanied by an appropriate affidavit (or declaration) from an individual with personal knowledge, failing which the court will normally recommend that the motion be denied". Scheduling Order [62], ¶2.

Defendant's belated efforts to satisfy this requirement come too late. Fed. R. Crim. P. ("Rule") 47(d) requires states the moving party to "serve any supporting affidavit with the motion" (emphasis added), not at a later date. "If a party could file a skeleton motion and later fill it in, the purpose of the time limitation would be defeated". Sztorc v. Prudential Insurance Company of America, 2008 WL 597203, *2 (W.D.N.Y. 2008). To excuse defendant's failure would only cause further delay in this case, which would undermine the public's interest in a speedy trial. See Zedner v. United States, 547 U.S. 489, 501-02 (2006); United States v. Lewis, 2018 WL 3195158, *2 (W.D.N.Y.), adopted, 2018 WL 1805554, *3 (W.D.N.Y. 2018) ("to excuse the Defendant's failure to [submit an affidavit (or declaration) of standing by the deadline] would undermine the public's interest in a speedy trial").

Alternatively, for the first time at the June 11, 2018 oral argument, defendant's counsel argued that the search warrant itself, which described the premises as defendant's residence, was sufficient to establish standing. That argument is also untimely. See Lewis, 2018 WL 1805554, *3 ("[i]t appears to the Court that Defendant originally submitted the warrant and application from Lieutenant Brennan to challenge the legality of the search of 234

North Ogden Street - not to establish standing. Defendant's attempt, after failing to heed Judge McCarthy's scheduling orders, to recharacterize Lieutenant Brennan's warrant application as evidence supporting standing is unavailing").

Even if I were to consider that argument, "[t]he law is clear that the burden on the defendant to establish standing is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge." United States v. Montoya-Eschevarria, 892 F. Supp. 104, 106 (S.D.N.Y. 1995). Therefore, "[c]ourts have held that defendants cannot rely on the government's position or theory to establish standing and must instead prove their expectation of privacy as to a particular search", United States v. Montemayor, 2013 WL 12205087, *1 (N.D. Ga. 2013). Without an affidavit (or declaration) from the defendant establishing standing it is "almost impossible" to establish standing, because a privacy interest "depends, in part, on the defendant's subjective intent and his actions that manifest that intent". United States v. Ruth, 65 F.3d 599, 605 (7th Cir. 1995) (defendant could not carry his burden "simply by relying on the facts cited in the Federal Affidavit for a search warrant and testimony by [a DEA agent] at one of the hearings on the motion to suppress").[11]

---

[11]    See also United States v. Gerena, 662 F. Supp. 1218, 1250–51 (D. Conn. 1987) ("[d]efendants, not the Government, are in the best position to apprise the Court of the legitimate basis for their standing allegations. Indeed it is their duty to do so"); United States v. Reed, 2007 WL 2903832, *3 (W.D.N.Y. 2007), aff'd, 409 Fed. App'x 471 (2d Cir. 2011) (Summary Order) (reliance on the allegations supporting the criminal complaint is insufficient to establish standing); United States v. Holland, 985 F. Supp. 587, 601 (D. Md. 1997) ("Holland cannot assert his proprietary interest and reasonable expectation of privacy in [the premises] through the government's pre-search theory and witnesses"); United States v. Sykes, 2006 WL 2265309, *9 (W.D.N.Y.), adopted, 2006 WL 2711460 (W.D.N.Y 2006) (reliance on the testimony of a government agent concerning the defendant's ownership of a vehicle failed to establish standing to contest the search of the vehicle); United States v. Cody, 434 F. Supp. 2d 157, 167 (S.D.N.Y. 2006) ("a district court may not grant a defendant standing to pursue a suppression motion 'relying solely on the government's theory of the case,' because to do so would amount to 'an evisceration of the defendant's burden of proof as established by the Supreme Court'"); United States v. Best, 255 F. Supp. 2d 905, 910 (N.D. Ind. 2003) ("[a]n affidavit or testimony from a defendant is nearly essential for establishing that defendant's subjective expectation of privacy for Fourth Amendment purposes")

*But see* United States v. Maxwell, 778 F.3d 719, 732–33 (8th Cir. 2015) ("a warrant affidavit is evidence that must be weighed in determining [standing], unlike . . . pleadings and litigation 'positions'" of the government).

   Moreover, even if defendant had standing to contest the search, his conclusory arguments fail to establish a basis for suppression.  Based on his training and experience, SA Galle interpreted a series of  recorded telephone conversations as establishing that defendant made arrangements to sell cocaine at the 440 7th Street on August 19, 2017.  [144-1], ¶¶194-99. He also detailed other transactions defendant allegedly participated in (id., ¶¶200-11), and opined that given defendant's role in the alleged drug conspiracy, he would "need in his possession a ready supply of the tools of the trade associated with the distribution of narcotics". Id., ¶212. While defendant appears to argue that probable cause was lacking because it relied upon information for an anonymous source (Torre Affirmation [93], ¶40), that argument ignores that a bulk of the information came from recorded conversations and when confidential sources were utilized, their reliability was set forth by SA Galle.  *See, e.g.,* [144-1], ¶208 n. 7.  Reviewing the entirety of the search warrant in a common sense manner, as I must *see* Gates, 462 U.S. at 236, SA Galle's Affidavit  demonstrates that there was ample probable cause supporting the search warrant. *See* United States v. Donald, 417 Fed. App'x 41, 43 (2d Cir. 2011) (Summary Order) (where defendant's wife, who was identified as being involved in the narcotics scheme, was observed  travelling from the defendant's "residence to consummate a narcotics transaction . . . . [t]ogether with the scale of [the defendant's] distribution activities . . . there was a substantial basis for the issuing judge to find by a fair probability that evidence of this criminal conduct could be located at [the defendant's] residence").

In similar conclusory form, defendant argues that the search warrant fails to set forth with sufficient specificity the location to be searched. This too is belied by the search warrant application, which contains a detailed description of the premises authorized to be searched ([144-1], Attachment A-9, ¶¶209-210). *See* United States v. Jefferson, 2011 WL 6778620, *3 (D. Conn 2011) (where the search warrant identified the building and door to be entered, it sufficiently described the subject premises with particularity).

Defendant also argues that "[a]ny material misrepresentations relating to the probable cause determination . . . also requires a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978)". Torre Affirmation [93], ¶42. To be entitled to a Franks hearing, a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998). Defendant's conclusory request, which fails to identify even one specific alleged misrepresentation, falls far short of meeting that standard, and I therefore recommend that this motion be denied in its entirety.

### c. Defendant Devincio James' Motion to Suppress Evidence from the Search of 1080 99th Street, Niagara Falls

Defendant James moves to suppress the search of his residence at 1080 99th Street for lack of probable cause, by arguing that he "has never been found to be in possession of any controlled substances, let along amounts Agent Galle alleges in his affidavit", and that "the only thing tying [him] to this alleged cocaine possession is a few ambiguous text messages and his presence in another person's home on two occasions". Ginter Affidavit [111], ¶¶4-15.

SA Galle's Affidavit identified defendant as "a high level customer" of the Rivera-Figueroa drug trafficking organization and details a series of recorded telephone

conversations and text messages that he exchanged with co-defendant Rivera-Figueroa an August 16, 2017.  [144-1], ¶¶14-22, 212.  Based on his training and expertise, SA Galle opined that defendant purchased a half kilogram of cocaine from co-defendant Rivera-Figueroa at 92 Wiley Place and was surveilled leaving that residence with a backpack and driving into the City of Niagara Falls.  Id., ¶¶14-22, 212. SA Galle also interpreted a variety of text messages on August 28 and September 1, 2017, as establishing that defendant had arranged to purchase another half kilogram of cocaine. Id., ¶¶214-17.  On September 1, 2017, surveillance observed defendant return to 92 Wiley Place in same vehicle, and when he left that residence a traffic stop of his vehicle was conducted. Id., ¶218.  However, SA Galle did not indicate whether law enforcement conducted a search of defendant's vehicle in an attempt to locate the cocaine.   SA Galle interpreted additional text messages exchanged by defendant on September 26, 2017, as arranging to purchase another half kilogram of cocaine from co-defendant Rivera-Figueroa. Id., ¶219.

SA Galle stated that defendant's "ability to purchase half kilogram quantities of cocaine on an almost weekly basis clearly shows that he is a high level cocaine trafficker".  Id., ¶223.  Based on that and the other information set forth in his affidavit, SA Galle opined that defendant "would likely have large quantities of cocaine, and the proceeds from the distribution of cocaine . . . located at 1080 99th Street". Id.

That opinion, when coupled with the evidence of defendant's alleged significant drug trafficking, is sufficient to establish probable cause to search the residence.  "[C]ourts in this Circuit have consistently ruled that it is proper for a judge to find probable cause to search a residence where there is evidence of narcotics trafficking and a law enforcement officer has opined that narcotics traffickers keep evidence of their illicit activities at their residence." United

States v. Pignard, 2007 WL 431863, *4 (S.D.N.Y. 2007);  United States v. Cruz, 785 F.2d 399,

404-05 (2d Cir.1986) (probable cause to search the apartment of suspected drug dealer existed

where "no agent saw [him] or any of his associates use the apartment', but the  affiant "ventured

his opinion that, based upon his experience, narcotics dealers 'customarily' maintain apartments

and other locations apart from their residences in furtherance of their business").  *See also* United

States v. Mikhailin, 2013 WL 4399046, *2 (S.D.N.Y. 2013) ("[i]n assessing whether contraband

is likely to be found at a conspirator's home, an issuing judge is entitled to rely both on an agent's

expert opinion and on the commonsense notion that an individual may have evidence of that

conspiracy located in his residence").

 While defendant notes that SA Galle's Affidavit demonstrates that he was not

found in actual possession of any cocaine (Ginter Affidavit [111], ¶6), such direct evidence is not

required to establish probable cause, nor does the absence of such evidence negate the other

evidence supporting the existence of probable cause.  *See* Singh, 390 F.3d at 182;  Eyer v. Evans,

2004 WL 193116, *3 (E.D. La. 2004) ("the fact that the officers did not see Plaintiff in actual

possession of the marijuana does not require a finding of no probable cause"); United States v.

Winkler, 2008 WL 859197, *6 (W.D. Tex. 2008) ("specific information that a defendant is in

actual possession of child pornography is unnecessary for a finding of probable cause for a

warrant to issue").

 Defendant also questions SA Galle's interpretation of the "few ambiguous text

messages".  Ginter Affidavit [111], ¶112.  However, SA Galle's experience in drug

investigations was set forth in his supporting affidavit ([144-1], ¶2), and it was permissible for

the court to rely on his interpretations when making its probable cause determination. *See*

Cancelmo, 64 F.3d at 808; Carmichael, 2016 WL 9273619,*3.  For these reasons, I conclude that the search warrant was supported by probable cause, and recommend that this motion be denied.

### d.  Defendant Jenhsen Rodriguez's Motion to Suppress Evidence from the Search of 42 Wiley Place, Lower

Defendant Rodriguez argues that the search warrant for 42 Wiley Place was not supported by probable cause.  Schwartz Affirmation [94], ¶¶88-96.  The government responds that the motion is not supported by an affidavit (or declaration) of standing from defendant, and should be denied on that basis. Government's Response [129], pp. 17-18.  I agree.

As discussed above, it is both well settled and expressly emphasized in my Scheduling Orders in this case that "[a] defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched",  Marshall, 2012 WL 5511645,*1, failing which the motion will generally be denied.  See Scheduling Order [62], ¶2.  Since defendant fails to allege that he had an expectation privacy in the premises, I recommend that this motion be denied.

### e.  Defendant Quinton Jones' Motion to Suppress Evidence from the Search of 57 Juniata Place[12]

Although defendant Jones' motion to suppress refers to an "accompanying declaration" (Memorandum of Law [95-1], p. 7), his counsel conceded at oral argument that one was inadvertently not prepared.   As discussed above, this is fatal to defendant's motion. See Marshall, 2012 WL 5511645, *1. Although defendant requested an opportunity to submit an affidavit (or declaration) of standing at oral argument, to permit him to do so at this time would

---

[12]     Although both the motion and response refer to varying addresses, the parties agreed at oral argument at the address at issue was 57 Juniata Place.

contravene Rule 47(d), and undermine the public's interest in a speedy trial. *See* Zedner, 547 U.S. at 501-02; Lewis, 2018 WL 1805554, *3.

  In any event, even if defendant had timely established standing, I would recommend that the motion be denied on the merits. In support of the motion, defendant argues that the search warrant is the fruit of the unlawful Title III wiretap warrants, without offering any independent arguments for suppression. Since I have recommended that the motion to dismiss the Title III evidence be denied, there is no basis for suppressing the fruit of those warrants, including the search warrant for 57 Juniata.

  **f. Defendant Romero's Motion to Suppress the Evidence from a Search of a Package Addressed to Her at 29 Tower Street**

  Defendant Romero moves to suppress the evidence from a search warrant ([132-1], pp. 2-12 of 12) issued for a package addressed to her at 29 Tower Street. Bogulski Affirmation [100], pp. 5-7. The warrant was supported by a pair of Affidavits from John Kujawa, a City of Buffalo Police Department K-9 officer, attesting to the certification of "Destro" a canine in the detection of the odor of narcotics, and that he "alerted to the odor of narcotics [in the package] with an aggressive alert". [132-1], pp. 10-11 of 12.

  While defendant's motion is captioned as seeking suppression, it primarily seeks discovery with "leave to file further motions regarding probable cause relating to the search of the package". Bogulski Affirmation [100], p. 6. Defendant seeks "specific training manuals", and "detailed discovery pertaining to the reliability of the K-9", including "testing, credentials and work history for the dog and handler", as well as a hearing to determine whether "the dog in question had a reliable track record in discovering cocaine". Id., pp. 6-7. In response, the government argues that defendant has failed to submit an affidavit (or declaration) establishing his standing to contest the search of the package. Government's Response [132], pp. 14-15.

For the first time at oral argument, defendant pointed to her status, as the recipient of the package, as establishing standing.  That argument, while untimely, is persuasive.  A sender or addressee of a package "presumptively possesses a legitimate expectation of privacy in the contents of the package".  United States v. Ghali, 317 F. Supp. 2d 708, 712 (N.D. Tex. 2004), aff'd, 184 Fed. App'x 391 (5th Cir. 2006); United States v. Barrios, 1995 WL 728440, *3 (S.D.N.Y. 1995), aff'd, 210 F.3d 355 (2d Cir. 2000); United States v. Hernandez, 313 F.3d 1206, 1209 (9th Cir. 2002) (citing United States v. Jacobsen, 466 U.S. 109, 114 (1984)).  However, even if I were to conclude that defendant had standing to contest the search, she has not established any basis for suppression.  The canine alert, along with the other circumstances set forth by Officer Kujawa [132-1], pp. 3-9 of 12, including that neither the sender nor recipient could be associated with the addresses on the package (id., p. 8 of 12, ¶9), were sufficient to establish probable cause for the search.  See United States v. Fronk, 173 F.R.D. 59, 73 (W.D.N.Y. 1997) (the postal inspector's  affidavit, which set forth "various facts that led her to believe the package contained controlled substances" and that  a trained canine had positively alerted to the package for the presence of narcotics, provided "ample probable cause" to support the package warrant).

The government opposes defendant's requests for additional discovery relating to the canine, arguing that he "provides no basis upon which to question the K-9's qualifications especially in light of the results of the search, which ultimately confirmed the K-9's positive indication was correct". Government's Response [132], pp. 15-16.  "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization  has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the

dog's alert provides probable cause to search." <u>Florida v. Harris</u>, 568 U.S. 237, 246–47 (2013).

Therefore, "courts have required the government to disclose relevant canine training and

certification records" <u>United States v. Wright</u>, 2008 WL 8797841, *3 (D. Vt. 2008) (citing

cases), and I see no reason why that should not occur here to the extent it has not occurred

already.   However, "field performance records are not required for the prosecution to establish

probable cause." <u>United States v. Foreste</u>, 780 F.3d 518, 528 (2d Cir. 2015) That is especially so

here, where defendant has failed to offer any basis for questioning the reliability of the canine.

While defendant attempts to cast doubt on the reliability of the canine by characterizing it as

"interesting" that the Postal Inspector requesting the warrant was the same as the one who called

for the K-9 sniff (Bogulski Affirmation [100], p. 6), such conduct is benign and offers no basis

for questioning the reliability of the canine's positive alert.

Therefore, the government shall provide defendant with Destro's training and

certification records, and I recommend that defendant's motion to suppress the package warrant

be denied.


4.      **Motions to Suppress Statements**

a.      **Defendant Romero**

Defendant Romero seeks a suppression hearing concerning whether her

statements were voluntary.  Bogulski Affirmation [100], p. 7.  She provides no further details of

the statements at issue and offers no affidavit (or declaration) from herself or another individual

with personal knowledge in support of the motion.

It is settled law that a motion seeking a suppression hearing must be accompanied

by an affidavit from someone having *personal* knowledge of the facts justifying the hearing. *See*

United States v. Gillette, 383 F.2d 843, 848–49 (2d Cir. 1967).  Ignoring this longstanding

requirement, which is expressly set forth in all of  my Scheduling Orders, defendant fails to

provide an affidavit (or declaration) from an individual with personal knowledge justifying a

basis for a suppression hearing.  *See* Id. at 848–49 ("[t]he affidavit submitted for appellant is

insufficient in that it does not . . . allege personal knowledge on the part of appellant's attorney;

accordingly, there was no factual issue to be resolved and the denial of a hearing was correct");

United States v. Militello, 2013 WL 6498961, *2 (W.D.N.Y. 2013) ("[a]n attorney's affidavit

made without personal knowledge is insufficient to create an issue of fact requiring an

evidentiary hearing"); United States v. Perryman, 2013 WL 4039374, *6 (E.D.N.Y. 2013)

("[c]ourts in this Circuit have repeatedly denied motions to suppress without a hearing where

defendants have failed to provide affidavits alleging facts based on personal knowledge" (citing

cases)).  Nor does defendant offer any specific factual allegations requiring a hearing.  *See*

United States v. Richardson, 2010 WL 5553995, *1 (W.D.N.Y. 2010), adopted, 2011 WL 53476

(W.D.N.Y. 2011) ("bare, conclusory allegations in defendant's motion to suppress statements are

insufficient to create a need for an evidentiary hearing"); United States v. Cook, 348 F. Supp. 2d

22, 28 (S.D.N.Y. 2004) ("[a] defendant seeking a . . . suppression hearing must make more than

a 'bald assertion' that the statement in question was involuntary").

　　　　　Therefore, I recommend that this motion be denied without a hearing.  *See* United

States v. Crule, 2017 WL 5166566, *1 (W.D.N.Y.  2017), adopted, 15-CR-00143 [365] (Vilardo,

J.) ("[a]n attorney affidavit containing no factual details is insufficient to raise any dispute as to

whether [defendant] was Mirandized, questioned, coerced into making a statement, or denied his

right to counsel").

### b.    Defendant Andino

Defendant Andino alleges, through the declaration of his counsel, that he gave a recorded statement before he was  properly advised of his <u>Miranda</u> rights.  O'Rourke Declaration [96], ¶4.  That motion was not accompanied by an affidavit (or declaration) from defendant. During the July 10, 2018 oral argument, more than four months after the suppression  motion was filed, defendant first presented an Affidavit [228] supporting the motion. At oral argument, the government argued that the untimely Affidavit should not be considered.  I agree.

As discussed above, the time for defendant to properly support the motion has expired.  To permit him to do so at this time would contravene Rule 47(d), and undermine the public's interest in a speedy trial. *See* <u>Zedner</u>, 547 U.S. at 501-02; <u>Lewis</u>,  2018 WL 1805554, *3.  Therefore, I recommend that this motion be denied without a hearing.

### 5.    Defendant James' Motion for Disclosure of the Grand Jury Transcripts

Defendant James moves for disclosure of the grand jury transcripts. Ginter Affidavit [98-1], ¶¶3-4.  In response, the government argues that defendant's "conclusory allegations of a particularized need for Grand Jury testimony" are "insufficient to controvert the presumption of regularity in grand jury proceedings".  Government's Response [134], p. 4.

Since "a presumption of regularity attaches to grand jury proceedings" <u>United States v. Leung</u>, 40 F.3d 577, 581 (2d Cir. 1994), defendant has the "burden of asserting that *particularized and factually based grounds* exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment". <u>United States v. Abcasis</u>, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992) (emphasis added). *See also*  <u>United States v. Torres</u>, 901 F.2d 205, 233 (2d Cir. 1990), <u>abrogated on other grounds by</u> <u>United States v.</u>

Marcus, 628 F.3d 36 (2d Cir. 2010) (disclosure "is rarely permitted without specific factual allegations of government misconduct"); Leung, 40 F.3d at 582 ("[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct"). This standard is "'demanding.'" United States v. Hernandez, 2015 WL 738697, *1 (D. Colo. 2015). The "strong presumption of regularity in grand jury proceedings . . . . cannot be outweighed by conclusory or speculative allegations of misconduct". United States v. Morgan, 845 F. Supp. 934, 941 (D. Conn. 1994), aff'd, 51 F.3d 1105 (2d Cir. 1995). See United States v. Sandford, 2016 WL 791435, *4 (W.D.N.Y.), adopted, 2016 WL 3951217 (W.D.N.Y. 2016) ("[u]nspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden").

Beyond arguing that the grand jury is a "bulwark between the accuser and the accused", the only explanation defendant provides for his entitlement to the grand jury transcripts is his observation that "[i]t is not unusual for courts to order dismissal of an indictment based at least in part on erroneous or misleading legal instructions". Ginter Affidavit [98-1], ¶4. Even if that were so, defendant presents nothing to suggest that *this* grand jury was provided with improper instructions. Without that, the motion falls far short of what is required for demonstrating that disclosure of the grand jury testimony is warranted, and the motion is denied on that basis.

### 6.    Defendant James' Motions to Produce Co-Conspirator Statements and to Exclude Any Non-Testifying  Statements pursuant to <u>Bruton</u>[13]

Fed. R. Evid. 801(d)(2)(E) "does not contain a required pretrial notice [for co-conspirator statements] and therefore, there is no requirement on the part of the government to

---

[13]    Bruton v. United States, 391 U.S. 123 (1968).

make any such disclosure of this type of evidence at this time." United States v. McDuffie,

2017 WL 4683979, *2 (W.D.N.Y. 2017); United States v. Goode, 2018 WL 919928, *18

(S.D.N.Y. 2018) ("Rule 16 does not otherwise require disclosure of co-conspirator statements").

Accordingly, this motion is denied, and "[a]ny request to exclude such statements at the trial, is a

matter left to the discretion of the trial judge". United States v. Wesley, 2010 WL 2649880, *7

(W.D.N.Y 2010); United States v. Mastropieri, 685 F.2d 776, 787 88 (2d Cir. 1982);  United

States v. Anguiera, 2012 WL 1232096, *1 (W.D.N.Y. 2012).

### 7.    Defendant James' Motion for Disclosure of Informants

Defendant James seeks the identity of the government's informants.  Ginter

Affidavit [98-1], ¶¶103-114.  In response, the government argues that defendant has not satisfied

his burden of demonstrating a need for this information, and that its "interest in protecting the

confidential informants' safety certainly outweighs the defendant's generalized and unsupported

need to learn the informants' identities".  Government's Response [134], p. 27.

The government is not required to provide early disclosure of the identities of

informants unless "an informer's identity, or of the contents of his communication, is relevant

and helpful to the defense of an accused, or is essential to a fair determination of a cause".

Roviaro v. United States, 353 U.S. 53, 60–61(1957).  "The defendant bears the burden of

showing the need for disclosure of an informant's identity . . . and to do so must establish that,

absent such disclosure, he will be deprived of his right to a fair trial."  United States v. Fields,

113 F.3d 313, 324 (2d Cir. 1997).

"The defendant is generally able to establish a right to disclosure where the

informant is a key witness or participant in the crime charged, someone whose testimony would

be significant in determining guilt or innocence."  United States v. Saa, 859 F.2d 1067, 1073 (2d

Cir.1988). Disclosure is not required if a defendant fails to show that "the testimony of the informant would . . . [be] of even marginal value to the defendant's case". Id. "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324.

      Without offering any basis for his belief, defendant argues that "it is apparent that each of the informant[s] in this case is a material witness". Ginter Affidavit [98-1], ¶114. Without more, the need for disclosure of informant identities has not been established. *See* United States v. Boone, 2003 WL 841088, *6 (S.D.N.Y. 2003) ("[m]ere speculation . . . that the informer may possibly be of some assistance does not overcome the strong public interest in protecting informants"). Since defendant has failed to make that showing, the motion is denied.

### 8. Defendant Andino's Challenge to the Timing of the Discovery to be Produced by the Government

      For the discovery requests that follow, the government has represented that it will produce responsive materials by some deadline in advance of trial. Defendant seeks earlier production of these materials.

#### a. Jencks Act (18 U.S.C. §3500) Material

      Defendant seeks production of Jencks Act material "at least 30 days in advance of trial". O'Rourke Declaration [96], ¶58. However, "[c]ourts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material." United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* United States v. Coppa,

267 F.3d 132,145 (2d Cir. 2001) (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); United States v. Seabrook, 2010 WL 5174353, *3 (S.D.N.Y. 2010) ("[t]he Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); United States v. Exolon Esk Co., 1995 WL 46719, *3 (W.D.N.Y. 1995) ("it is . . . uniformly recognized that a district court generally lacks authority to order pretrial production of Jencks materials over an objection by the government"). Nonetheless, the government agrees to produce this material "at a time no later than two weeks prior to trial or as ordered by the [trial court]". Government's Response [137], p. 20.   Therefore, this motion is denied.

### b.  **Brady/Giglio Material**[14]

Defendant seeks "immediate" disclosure of these materials.  O'Rourke Declaration [96], ¶66. In response, the government represents that it will produce Brady material "if and when it is aware of it", and will produce the Giglio material, "in accordance with the schedule set by the District Court prior to trial and no later than when [it] produces and delivers the Jencks Act material".  Government's Response [137], pp. 17-18.

"The government's obligations under Brady . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio, 405 U.S. at 154).  Generally, "Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material

---

[14]    Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

upon request by a defendant". <u>Coppa</u>, 267 F.3d at 146. "[A]s long as a defendant possesses <u>Brady</u> evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." <u>Id</u>. at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case". <u>Id</u>. at 146.

"Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to <u>Brady</u> where the Government, as here, has made a good-faith representation to the Court and defense counsel that it recognizes and will comply with its disclosure obligations under <u>Brady</u>." <u>United States v. Kelly</u>, 91 F. Supp. 2d 580, 584 (S.D.N.Y. 2000). At this point, I have no reason to question the government's representations. *See* <u>United States v. Savarese</u>, 2002 WL 265153, *2 (S.D.N.Y. 2002) ("district courts in this circuit routinely accept the type of representation that the Government has made concerning <u>Brady</u> material").

I am also satisfied by the government's representation that it will produce any <u>Giglio</u> material at the same time it produces its Jencks Act material (*i.e.*, no later than two weeks prior to trial or as ordered by the trial court). Therefore, this motion is denied, without prejudice to renewal.

### c.  Disclosures Pursuant to Fed. R. Evid. 404(b), 608 and 609

Defendant seek pretrial disclosure of any evidence that the government intends to introduce at trial pursuant to Fed. R. Evid. 404(b), and "any other evidence the government intends to use to impeach defendant's credibility if he should choose to testify". O'Rourke Declaration [96], ¶¶82-83. In response, the government represents that it "will continue to disclose evidence in its possession which might fall within the ambit of Rules 404(b) . . . 608,

and 609, and will provide notice of its intention to rely upon such evidence at the time it is ordered to do so by the trial court". Government's Response [137], p. 19.

Fed. R. Evid. 404(b)(2)(A) requires that the government to "provide reasonable notice of the general nature of any such [Fed. R. Evid. 404(b)] evidence that the prosecutor intends to introduce at trial". "Rule 608 of the Federal Rules of Evidence does not contain the same pretrial notice requirement." United States v. Jenkins, 2017 WL 9485700, *14 (W.D.N.Y. 2017), adopted, 2018 WL 324901 (W.D.N.Y. 2018). The government's representation that it will provide notice when ordered to by the trial court is sufficient. Therefore, this motion is denied, without prejudice to renewal.

### d.  Rule 16 Discovery

The government represents that it has complied with Rule 16 and "[i]f additional discovery material becomes available, [it] will disclose [it] without undue delay". Government's Response [137], p. 13. However, with respect to information about expert witnesses as required by Rule 16(a)(1)(G), including summaries of expert testimony, the government states that it will produce that discovery "in accordance with the standard District Court pre-trial Order". Government's Response [137], p. 13. The Advisory Committee Notes to the 1993 Amendment to Rule 16 state: "Although no specific timing requirements are included [in the expert disclosure provisions], it is expected that the parties will make their requests and disclosures in a timely fashion." "The rule is intended to minimize [the] surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Cruz, 363 F.3d 187, 196 (2d Cir. 2004).

The government's representation is adequate at this time. "As long as the Government does not try to surprise [defendant] with any expert testimony . . . a timetable that [the trial judge] sets should provide [defendant] with what he needs." United States v. Wrobel, 2017 WL 3097611, *7 (W.D.N.Y. 2017). Therefore, this motion is denied, without prejudice to renewal.

## B.    Government's Cross-Motions for Reciprocal Discovery

The government moves for reciprocal discovery pursuant to Rule 16(b) from each of the remaining defendants. See e.g., Government's Response [137], p. 26. "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Defendants have not opposed these requests. Therefore, the government's motions are granted. "Defendant[s] shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304 (W.D.N.Y. 2007) (emphasis omitted).

## CONCLUSION

For these reasons, the government's cross-motions for reciprocal discovery are granted, defendants' remaining non-dispositive motions are granted in part and denied in part as set forth above, and I recommend that defendants' motions to suppress evidence and statements be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by September 4, 2018. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails

to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v.</u> <u>Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u> <u>Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated:  August 21, 2018

　/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge