UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


    v.

                                         17-CR-183

CESAR RIVERA-FIGUEROA, et al.,           DECISION AND ORDER

         Defendants.

_____

## PROCEDURAL BACKGROUND

A forty-nine count superseding indictment charged twelve defendants with offenses involving controlled substances and firearms.[1]  Docket Item 53.  Two defendants, Daniel Navarro and Tori Rockmore, have pleaded guilty.  Between March 3, 2018, and July 5, 2018, the remaining ten defendants filed twelve sets of pretrial motions. Docket Items 85, 91, 93, 94, 95, 96, 97, 98, 100, 111, 112, and 219. Collectively, the defendants' motions sought the following relief:  dismissal of the superseding indictment; dismissal of Count 1, charging a continuing criminal enterprise; suppression of Title III (wiretap) evidence; suppression of evidence seized from the search of 92 Wiley Place (upper), 440 7th Street, 1080 99th Street, 42 Wiley Place (lower), and 57 Juniata Place; suppression of a  package addressed to defendant Romero at 29 Tower Street; and suppression of statements made by certain defendants.

_____

[1] Count 1 - engaging in a continuing criminal enterprise in violation of Title 21, United States Code, Section 848 (Cesar Rivera-Figueroa); Count 2 - conspiring to distribute 5 kilograms or more of cocaine in violation of Title 21, United States Code, Section 846 (Cesar Rivera-Figueroa, Jenhsen Rodriguez, Virgen Perez-Jurado, Josue Cardona-Soto, Devincio K.D. James, Omar Vazquez-Baez, Luis Andino, Joseph Jones,

The government responded to the various motions between April 5, 2018, and

July 8, 2018.  Docket Items 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 144, and

224.  On April 23, 2018, defendants Cesar Rivera-Figueroa and Devincio K.D. James

replied, Docket Items 158 and 159, and on July 10, 2018, defendant Luis Andino filed

an affidavit in further support of his motion to suppress statements, Docket Item 228.

Magistrate Judge Jeremiah J. McCarthy heard oral argument over several days, and he

issued his comprehensive, forty-two page Report, Recommendation and Order (RR&O)

on August 21, 2018.  In that decision he recommended that the defendants' motions to

dismiss and suppress be denied in their entirety.  Docket Item 253.

---

Quinton Jones, Sucley Romero); Counts 3 and 5 - attempting to possess cocaine with
intent to distribute in violation of Title 21, United States Code, Section 846, and Title 18,
United States Code, Section 2 (Cesar Rivera-Figueroa, Sucley Romero (Count 3) and
Cesar Rivera-Figueroa, Jenhsen Rodriguez and Josue Cardona-Soto (Count 5)); Count
4 - possessing with intent to distribute and distributing 500 grams or more of cocaine in
violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B) (Cesar
Rivera-Figueroa and Luis Andino); Counts 6-40 - using a communication facility to
commit a drug felony in violation of Title 21, United States Code, Section 843(b) (Cesar
Rivera-Figueroa, Jenhsen Rodriguez, Virgen Perez-Jurado, Josue Cardona-Soto,
Devincio K.D. James, Omar Vaszquez-Baez, Luis Andino, Joseph Jones, Quinton
Jones, Sucley Romero); Count 43 - possessing marijuana with intent to distribute in
violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(D) (Omar
Vazquez-Baez); Count 44 - maintaining a drug involved premises in violation of Title 21,
United States Code, Section 856(a)(1) (Omar Vazquez-Baez); Counts 45-48 -
possessing a firearm in furtherance of a drug trafficking crime in violation of Title 18,
United States Code, Section 924(c)(1)(A)(i) (Omar Vazquez-Baez, Jenhsen Rodriguez,
Devincio K.D. James, Quinton Jones); and Count 49 - possessing a firearm by a
convicted felon in violation of Title 18, United States Code, 922(g)(1) and 924(a)(2)
(Quinton Jones).  Counts 41 and 42 charged Daniel Navarro with possessing marijuana
with intent to distribute and maintaining a drug-involved premises; Navarro has since
pleaded guilty.

Six defendants filed objections to Judge McCarthy's RR&O: Cesar Rivera-Figueroa (Docket Item 254); Virgen Perez-Jurado (Docket Item 268); Devincio K.D. James (Docket Item 267); Joseph Jones (Docket Item 275); Quinton Jones (Docket Item 256); and Sucely Romero (Docket Item 265).  Defendant Rivera-Figueroa objects to Judge McCarthy's recommendation to deny the motion to dismiss the continuing criminal enterprise count on the ground that Judge McCarthy improperly applied the legal standard governing a challenge to the sufficiency of an indictment, rather than the standard governing a challenge for lack of specificity.  *See* Docket Item 254. Defendants Rivera-Figueroa, Perez-Jurado, James, Joseph Jones, Quinton Jones, and Romero each object to Judge McCarthy's finding that the requirements for necessity and probable cause were satisfied for the issuance of the Title III wiretaps.  *See*  Docket Items 254, 268, 267, 275, 256, and 265.  Defendant Perez-Jurado objects to Judge McCarthy's recommendation to deny the motion to suppress evidence seized from 92 Wiley Place.  Docket Item 268.  Defendant James objects to Judge McCarthy's recommendation to deny the motion to suppress evidence seized from 1080 99th Street. Docket Item 267.  Finally, defendant Romero objects to Judge McCarthy's recommendation to deny the motion to suppress the package addressed to her at 29 Tower Street.  Docket Item 265.  The government responded to the objections on October 2, 2018.  Docket Item 271.  After several adjournments at the request of defendant Romero, this Court heard oral argument on December 19, 2018.

## DISCUSSION AND ANALYSIS - OBJECTIONS

## ANALYSIS

If a defendant objects to the recommendations of a magistrate judge, the district court reviews those recommendations *de novo*. *See* 28 USC § 636(b)(1); Fed. R. Crim. P. 59(b)(3). In conducting its review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### I.   CONTINUING CRIMINAL ENTERPRISE

Judge McCarthy concluded that the allegations in count 1 of the superseding indictment were sufficient to charge a continuing criminal enterprise in violation of 21 U.S.C. § 848. Relying on *United States v. Ulbricht*, 31 F.Supp. 3d 540 (S.D.N.Y. 2014), and *United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002), Judge McCarthy found that "the government need not enumerate the specific who, when or where of the series in the indictment; it is enough that it is clear from the face of the indictment that [the defendant] is alleged to have engaged in a continuing series of narcotics conspiracies." Docket Item 253 at 4.

In his objection to the RR&O, Rivera-Figueroa takes exception to Judge McCarthy's reliance on *Ulbricht*, and likewise tries to distinguish a Western District of New York case, *United States v. Montague.*[2] Rivera-Figueroa asserts that those cases address the sufficiency of the indictment, whereas his argument involves specificity, "an entirely separate, and statutorily-permissible, ground for dismissal that argues that while

_____

[2] 2018 WL 1317347 (W.D.N.Y. Mar. 14, 2018).

an offense might be facially stated, it is woefully vague and unspecific so much so that a defendant is not apprised of the specific conduct equating to the offense." Docket Item 254 at 3.

In its decision in *United States v. Gil*, issued on June 20, 2018, this Court addressed that very argument. 313 F.Supp.3d 441 (W.D.N.Y. 2018). In *Gil*, this Court agreed with Judge Forrest's decision in *United States v. Ulbricht*, 2015 WL 413426 (S.D.N.Y. 2015).[3] In *Ulbricht*, Judge Forrest sought to reconcile the tension between *Flaharty* and *United States v. Joyner*, 313 F.3d. 40 (2d Cir. 2002) (suggesting "that some specificity as to the predicate offenses is required in the indictment"), by requiring "(at most) that the indictment specify the *types* of violations—e.g., violations of § 841 or § 846—that are alleged to serve as predicate offenses." *Ulbricht*, 2015 WL 413426 at *4 n.4 (emphasis in original). "No more granularity is required in the indictment." *Id.*; *see also Guam v. Jones*, 2006 WL 2949259 (Guam Terr. October 17, 2006) ("identification of the felonies comprising the series of offenses necessary has been found to be unnecessary by the Second Circuit").

As stated in *Gil*, this Court agrees with that analysis. The dicta in *Joyner* and the holding in *Flaharty* may be at odds, but in light of the continued vitality of *Flaharty*, the dicta in *Joyner* must give way. So if *Joyner's* dicta also has continued vitality, it must mean that a CCE indictment must specify only the types of offenses comprising the CCE series.

---

[3] Judge Forrest addressed this issue twice in *Ulbricht*: once on the defendant's motion to dismiss, 31 F.Supp.3d 540, and once in the context of jury instructions, 2015 WL 413426. Judge McCarthy relied on the former decision; in *Gil*, this Court relied on the latter, where in footnote 4 Judge Forrest explicitly addressed the issue that had been presented to this Court.

The indictment here includes that and more. The CCE count in the superseding indictment alleges violations of 21 U.S.C. §§ 841(a)(1) (possessing with intent to distribute and distributing a controlled substance), 843(b) (using a communication facility to commit a drug felony), and 846 (drug conspiracy) as part of the continuing series. Docket Item 53. It also specifies the time period of the CCE—from in or before July 2017 until on or about September 29, 2017, just over two months. It alleges that Rivera-Figueroa, acting in concert with five or more persons, occupied a position of organizer and supervisor. It alleges that Rivera-Figueroa obtained substantial income and resources from the enterprise and its continuing series of violations. *Id.* And it details the conspiracy and the substantive offenses charged against Rivera-Figueroa in counts 2 to 6, 9, 15 to 18, 20 to 22, 25 to 36, and 39. *Id.*

As noted above, Rivera-Figueroa argues that *Flaharty* principally addresses the failure to state an offense, not whether the offense was stated with requisite specificity. But *Flaharty's* analysis addressed both "lack of specificity" and "fail[ure] to charge an offense," 295 F.3d at 197, while the defendants in *Joyner* argued both specificity, 313 F.3d at 48, and that the indictment failed "to allege each material element of the offense," *id.* The cases addressing both *Joyner* and *Flaharty* have done so in the context of determining whether the indictment was specific enough. *See, e.g.*, *Ulbricht*, at *4 n.4 (indictment need not "specify" anything more than the types of violations); *Jones*, 2006 WL 2949259 at *9 ("Jones argues that the felony must be identified with specificity").

Moreover, the distinction between lack of specificity and failure to state an offense does not hold up in light of the language in Rule 12. *See Gil*, 313 F.Supp.3d at

6

445. Likewise, it is difficult to conceptualize how an indictment might lack the required specificity but still adequately allege an offense. *Id.* And the cases that address— almost interchangeably—an alleged lack of CCE specificity and the failure to state a CCE offense seem to reflect exactly that. *See id.* at 445-46; *see, e.g.*, *United States v. Santana-Madera*, 260 F.3d 133 (2d Cir. 2001); *United States v. Stevens*, 2006 WL 3827419 (W.D.N.Y. 2006) (Skretny, J.); *Ulbricht*, at *4 n.4; *Jones*, 2006 WL 2949259 at *9.

In sum, the indictment here is not defective. *See Flaharty*, 295 F.3d at 197. Because it is not defective, as a matter of law and a matter of logic, it must both adequately state an offense and be specific enough. *See* Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v). Rivera-Figueroa's motion to dismiss the CCE count therefore is denied.

## II.    MOTIONS TO SUPPRESS WIRETAP EVIDENCE

Defendants Rivera-Figueroa, Perez-Jurado, Joseph Jones, Quinton Jones, and Romero each have objected to Judge McCarthy's recommendation that the motions to suppress Title III evidence be denied. Three Title III wiretap orders are at issue: the July 21, 2017 order for target telephone number (716) 228-5### (TT1); the August 15, 2017 order for target telephone numbers (716) 308-4### (TT2), (787) 225-1### (TT3), and (716) 398-8### (TT4); and the September 11, 2017 order for TT3 and TT4, as well as target telephone number (787) 221-6### (TT5). In their motions to suppress, the defendants advanced three legal arguments, each of which Judge McCarthy rejected. Docket Item 253.

First, the defendants argued that the affidavits submitted in support of the wiretap applications failed to establish that electronic surveillance was necessary. In his RR&O, Judge McCarthy separately addressed the wiretap applications, each of which was supported by an affidavit of Special Agent Mark Schirching. Special Agent Schirching's affidavits described the history of the investigation—including the other investigative techniques that had been used but failed—in sufficient (and indeed great) detail. Judge McCarthy accorded appropriate deference to Judge Skretny's and this Court's review and acceptance of Special Agent Schirching's affidavits, as well as to Judge Skretny's and this Court's decisions to authorize electronic surveillance.

Specifically, Judge McCarthy correctly and appropriately concluded that "there were sufficient limitations identified by SA Schirching as to why the use of confidential sources could not have been better leveraged." Docket Item 253 at 11. By way of example, Judge McCarthy noted that "much of the information gleaned from the confidential sources was limited to small controlled purchases with one member of the alleged drug trafficking organization." *Id.* Likewise, Judge McCarthy concluded that Special Agent Schirching sufficiently and reasonably explained the difficulty and limitations of using undercover agents who would have had limited exposure to the alleged drug trafficking organization, as well as the limitations of physical surveillance. And Judge McCarthy credited Special Agent Schirching's explanation that calling witnesses before the grand jury would not fulfill the objectives of the investigation. *Id.* at 16. In other words, Judge McCarthy found that to uncover the large-scale operation that investigators had good reason to suspect, electronic surveillance was necessary. This Court agrees.

The defendants also argued that Special Agent Schirching's affidavits included a good amount of boilerplate language, which, if removed, would render the affidavits insufficient. Judge McCarthy concluded that while some of the language explaining why normal investigative techniques would not succeed appears to be boilerplate, that does not render the language ineffective. Again, this Court agrees. As Judge McCarthy observed, "[w]here, as here, 'boilerplate accurately depicts the facts on the ground, Title III requirements are satisfied." *Id.* at 17, *quoting United States v. Rajaratnam*, 2010 WL 4867402 (S.D.N.Y. Nov. 24, 2010). And as Judge McCarthy also accurately observed, Special Agent Schirching's affidavits make very clear that the government did not attempt to use a wiretap as the initial step: "[i]t tried and vetted other investigative tools, but because of the nature of the alleged conspiracy, those tools were of limited value in determining the extent of criminal activity." Docket Item 253 at 17.

Finally, the defendants argued to Judge McCarthy that the wiretap applications were not supported by probable cause. But as Judge McCarthy correctly observed, those arguments were largely conclusory. *Id.* at 19. And to the extent that those arguments are based on the assertion that certain conversations supporting the wiretaps might have had been entirely innocent and misinterpreted, Judge McCarthy correctly noted that the court could rely on "ambiguous statements that an agent interprets as narcotics-related." *Id.*, *quoting United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995).

Like many of their arguments to Judge McCarthy, the defendants' objections to his RR&O are perfunctory and conclusory, objecting without analyzing or explaining in any detail. Nonetheless, this Court has considered them and has reviewed Judge

9

McCarthy's recommendation regarding the wiretap evidence *de novo*. And having done so, this Court agrees with Judge McCarthy for the reasons stated above and in his RR&O and accepts his recommendation.

## III.    MOTIONS TO SUPPRESS EVIDENCE

### A. 92 Wiley Place, Upper

In her objections, defendant Perez-Jurado repeats her argument that the search warrant issued for 92 Wiley Place, Upper, was not supported by probable cause because "[t]he government failed to link the residence or its contents with criminal wrongdoing attributable to Perez-Jurado." Docket Item 268 at 2. And that is her objection in its entirety. *Id.* Even it that were sufficient to state a valid objection, it still would fail on the merits.

After his review of Federal Bureau of Investigation Special Agent Jason Galle's affidavit, Judge McCarthy concluded that it indeed "established a nexus between her alleged drug activities and residence." Docket Item 253 at 22. For example, he noted how Galle detailed the evidence that led him to believe that Perez-Jurado "participated in a drug transaction" and "accepted delivery of a package" with suspected drugs at her Wiley Place residence. *Id.* That certainly connected Perez-Jurado's alleged drug activities to her residence, and Judge McCarthy therefore recommended the denial of the defendant's motion to suppress. This Court agrees that the search warrant was supported by probable cause and accepts Judge McCarthy's recommendation to deny the motion to suppress.

**B. 1080 99th Street**

Defendant James moved to suppress the evidence seized during the search of his residence at 1080 99th Street. In his objections, James argues that Judge McCarthy erred in finding the application sufficient to issue a warrant. More specifically, he argues that Galle made baseless assertions in the application; that there was "absolutely no probable cause" to believe that the residence "would have large quantities of cocaine"; and that the proof of the pudding is in the fact that "no cocaine was found in the residence." Docket Item 267 at 2. This Court disagrees with each of those objections.

First, the affidavit submitted in support of the search warrant provided detailed evidence, including recorded phone calls and text messages, that the agent interpreted as establishing James's "ability to purchase half kilogram quantities of cocaine on an almost weekly basis" and making him "a high level cocaine trafficker." Docket Item 253 at 27 (quoting Docket Item 144-1 at ¶ 223). That alone, coupled with the agent's opinion that James would likely have drugs and sales proceeds "at 1080 99th Street," *id.*, was enough to establish probable cause for a warrant to search that location. *See United States v. Mikhailin*, 2013 WL 4399046, at *2 (S.D.N.Y. 2013) ("[i]n assessing whether contraband is likely to be found at a conspirator's home, an issuing judge is entitled to rely both on an agent's expert opinion and on the commonsense notion that an individual may have evidence of that conspiracy located in his residence"); *United States v. Pignard*, 2007 WL 431863, at *4 (S.D.N.Y. 2007) ("courts in this Circuit have consistently ruled that it is proper for a judge to find probable cause to search a residence where there is evidence of narcotics trafficking and a law enforcement officer

has opined that narcotics traffickers keep evidence of their illicit activities at their residence"); *cf. United States v. Cruz*, 785 F.2d 399, 404-05 (2d Cir. 1986) (probable cause to search the apartment of suspected drug dealer existed where "no agent saw [him] or any of his associates use the apartment," but the affiant "ventured his opinion that, based upon his experience, narcotics dealers 'customarily' maintain apartments and other locations apart from their residences in furtherance of their business").

Moreover, a court may rely on an experienced agent's interpretation of ambiguous communications in determining probable cause, *see Cancelmo*, 64 F.3d at 808, which the court issuing the warrant did here. *See* Docket Item 253 at 28-29. Finally, the fact that drugs were not actually found when the property was searched does not mean that there was no probable cause any more than finding drugs suggests that there was probable cause. *See United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). In sum, this Court agrees with Judge McCarthy that the application for the warrant to search 1080 99th Street was sufficient.

### C. Package Addressed to Sucley Romero at 29 Tower Street

Defendant Romero moved to suppress the evidence from a search warrant issued for a package addressed to her at 29 Tower Street. Docket Item 100. The search warrant was supported by affidavits from City of Buffalo Police Department K-9 Officer John Kujawa based on a canine sniff and alert. Because Romero "failed to offer any basis for questioning the reliability of the canine," Judge McCarthy recommended that Romero's motion to suppress be denied. But Judge McCarthy also directed the government to provide Romero with the canine's training and certification records. Docket Item 253 at 32.

In her objection, Romero does not rely on anything from those records to challenge the canine's reliability.  Instead, she repeats her assertion that the canine handler may have been suggestive or biased because the Postal Inspector who requested the search warrant also called for the K-9 officer.  Docket Item 265 at 3. Judge McCarthy already addressed that very argument in his RR&O, however, *see* Docket Item 253 at 32, and Romero again offers nothing more than her speculation that the handler may have been suggestive.  Moreover, Romero's suggestion that the canine sniff was tainted because the Postal Inspector who requested the warrant was the same person who called for the canine sniff is a non-sequitur.  There is no reason to believe that because the *Postal Inspector* suspected drugs and requested a canine sniff, the *dog's handler* would have done anything different than he usually does. Without more, Romero offers no reason to revisit the recommendation of Judge McCarthy.

### DISCUSSION AND ANALYSIS – NO OBJECTIONS FILED

Defendants Jenhsen Rodriguez, Josue Cardona-Baez, Luis Andino, and Omar Vazquez-Baez did not object to Judge McCarthy's RR&O; defendant Romero did not object to Judge McCarthy's recommendation to deny her motion to dismiss the superseding indictment or to suppress her statements; defendants Rivera-Figueroa and Perez-Jurado[4] did not object to Judge McCarthy's recommendation to deny their

---

[4] Defendant Perez-Jurado's objections include the following line with no context "R+R, Page 21, government failed to properly minimize Title III intercepted telephone calls."  If that is an objection to the wiretap based on minimization, it is overruled both because it is insufficient and because it is substantively without merit.

13

motions to suppress evidence from the search of 92 Wiley Place; and defendant Quinton Jones did not object to Judge McCarthy's recommendation to deny the motion to suppress evidence from the search of 57 Juniata Place. The time to object has now expired. For that reason, the defendants have waived their right to have those recommendations reviewed. *See* Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review.").

Nevertheless, in its discretion, this Court has carefully reviewed all the recommendations in Judge McCarthy's RR&O (Docket Item 253). Based on that review, and for the reasons stated above and in the RR&O, this Court adopts the RR&O in its entirety. All defendants' motions are DENIED.


## CONCLUSION

For the reasons stated above and in Judge McCarthy's RR&O, the defendants' motions to dismiss and to suppress wiretap evidence, physical evidence, and statements are DENIED.

SO ORDERED.

Dated:     January 17, 2019
           Buffalo, New York


                              *s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE